UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------x
                                     :
WILLIAM D. WALLACE ET AL.,           :
                                     :
                    Plaintiffs,      :        11 Civ. 8861 (TPG)
                                     :
         - against -                 :           **OPINION**
                                     :
                                     :
INTRALINKS ET AL.,                   :
                                     :
                    Defendants.      :
                                     :
                                     :
                                     :
-------------------------------------x
```

This is a motion for class certification pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  Plaintiff Plumbers and Pipefitters National Pension Fund seeks to certify a class of all who purchased defendant IntraLinks' stock between February 17, 2011 and November 11, 2011.  Plaintiff also seeks a subclass of those who purchased IntraLinks stock in the company's April 6, 2011 secondary offering.

For the reasons set out below, the court certifies the class and subclass.

## Procedural History

Plaintiff filed this action on December 5, 2011.  On April 3, 2012, the court consolidated the case with related actions and appointed lead

plaintiff, Plumbers and Pipefitters National Pension Fund (hereafter "plaintiff").  On June 15, 2012, plaintiff filed a consolidated complaint.

On July 31, 2012, defendants moved to dismiss the complaint.  On May 8, 2013, the court denied defendants' motion as to plaintiff's claims concerning misrepresentations or omissions about the strength of IntraLinks' business, its customers' satisfaction, and/or the loss or potential loss of IntraLinks' largest customer, the Federal Deposit Insurance Corporation ("FDIC").  Certain other of plaintiff's claims, alleging that IntraLinks made false or misleading statements concerning its revenue characterization and customer billing methods, were dismissed.

On February 18, 2014, plaintiff moved to certify a class and subclass.  Defendants oppose.

## Consolidated Complaint

*The Parties*

Lead plaintiff, the Fund, is a multiemployer defined benefit pension plan.  It brings this class action on behalf of itself and all others who acquired IntraLinks' common stock from February 17, 2011 through November 11, 2011.  Those who purchased IntraLinks' common stock pursuant to the registration statement and prospectus governing the April 6, 2011 secondary offering form a putative subclass.  Defendants are divided into three groups.

The first group, the "Exchange Act Defendants," is comprised of IntraLinks, Andrew Damico, and Anthony Plesner.  Damico was Chief Executive Officer, President, and director of IntraLinks throughout the class period.  Plesner was Chief Financial Officer and Chief Administrative Officer throughout the class period.  Both individuals signed all of IntraLinks' public filings during the class period.  The complaint alleges these defendants violated Sections 10(b) and 20(a) of the Exchange Act.

The second group, called the "Securities Act Company Defendants," encompasses the Exchange Act Defendants and additionally includes IntraLinks board members who signed the registration statement issued for the secondary offering of April 6, 2011. These additional persons are: Patrick Wack, Jr., Brian Conway, Peter Gyenes, Thomas Hale, Habib Kairouz, Robert McBride, and Harry Taylor. The complaint alleges these defendants violated Sections 11 and 12(a)(2) of the Securities Act of 1933.

The last group, the "Securities Act Underwriter Defendants," includes all investment banks that underwrote IntraLinks' secondary offering on April 6, 2011.  These are: Morgan Stanley & Co. Incorporated, Jefferies & Company, Inc., Lazard Capital Markets LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., and Pacific Crest Securities LLC.  The complaint alleges these defendants violated Sections 11 and 12(a)(2) of the Securities Act of 1933.

*Background of Claims*

IntraLinks is a publicly traded provider of "virtual data rooms" ("VDRs"), which are software platforms that facilitate the secure exchange of information between organizations and departments.

Historically, IntraLinks divided its customers between those who used VDRs for mergers and acquisitions ("M&A") and those who used them for debt capital markets ("DCM").  IntraLinks' business was based on selling subscription contracts, usually three to twelve months in duration, during which time customers—typically financial institutions— would use IntraLinks' services to facilitate specific projects or transactions.

In 2009, IntraLinks sought to diversify its business, creating a new division called Enterprise, which served customers that used IntraLinks for longer term storage needs.  Enterprise clients treated IntraLinks' platform as an ongoing repository, rather than a project-specific tool, and therefore renewed their contracts for longer periods of time.  The Enterprise division thrived almost immediately.  Before going public in August 2010, IntraLinks touted the growth in its Enterprise division, and investors viewed the Enterprise division as more promising than IntraLinks' other lines of business.

By early 2010, FDIC had become IntraLinks largest and most important customer.  FDIC accounted for over 7% of IntraLinks' total revenue, while the second-largest customer accounted for less than 2%

of total revenue.  Furthermore, FDIC's business was particularly important to IntraLinks' market value because it accounted for over 15% of the revenue in IntraLinks' Enterprise division.

Yet difficulties arose in IntraLinks' relationship with FDIC.  FDIC, which was spending $13 million per year on IntraLinks' services, sought to renegotiate its contract in early 2010.  IntraLinks refused to renegotiate.  In July 2010, FDIC issued a Request for Proposals ("RFP") to find different VDR providers.  On November 18, 2010, IntraLinks CFO Anthony Plesner signed a contract with FDIC that indicated FDIC was "exercising the final 6-month option period" in its task order with IntraLinks.  IntraLinks ultimately managed to maintain some business with FDIC for longer than that six-month option period.  But on November 7, 2011, FDIC publicly announced that it would finish its existing projects that relied on IntraLinks' services, and not use IntraLinks for any future projects.

Plaintiff alleges that defendants made numerous false and misleading public statements in light of IntraLinks' deteriorating relationship with FDIC.  On February 17, 2011, the beginning of the putative class period, IntraLinks' Form 8-K and press release touted growth in its Enterprise business sector and projected a revenue increase of between 16% and 22% for 2011.  In its March 23, 2011 Form 10-K, IntraLinks again made optimistic statements about the prospects of its Enterprise business sector, and stated "We believe our customers have a

high level of satisfaction, as evidenced by the 104% renewal rate . . . for our subscription contracts during the year ended December 31, 2010."

On April 6, 2011, IntraLinks issued new shares of stock in a secondary offering.  Pursuant to this offering, IntraLinks produced a Form S-1 Registration Statement and a Form 424(b)5 Prospectus. Alleged misstatements and omissions in these documents are the same as those in the March 23, 2011 Form 10-K.

IntraLinks made a partial disclosure concerning its troubles with FDIC in a phone call with investors on May 11, 2011, following its first-quarter earnings announcement.  On the call, IntraLinks disclosed difficulties in the Enterprise business "as a result of a single Enterprise customer whose IntraLinks usage will significantly decrease over the remainder of year."  Market analysts inferred that this customer was FDIC, but they did not know that FDIC was seeking a different vendor or that it was dissatisfied with IntraLinks.

IntraLinks made additional seemingly optimistic statements in its first quarter Form 10-Q and second quarter Form 10-Q, as well as its August 10, 2011 Form 8-K.  On November 8, 2011, one day after FDIC publicly announced that it would not use IntraLinks on future projects, IntraLinks again filed a Form 8-K, this time attributing disappointing Enterprise results to deficiencies in its sales force, and declining to address FDIC's announcement.

Plaintiff alleges that all who purchased or acquired IntraLinks stock during the class period suffered because the share price during that time was inflated due to violations by defendants.

**Class Certification**

Plaintiff seeks certification of a class (the "Exchange Act Class") and a subclass (the "Securities Act Subclass").  The Exchange Act Class would include all persons or entities who acquired IntraLinks common stock during the class period (February 17, 2011 through November 11, 2011, inclusive).  The Securities Act Subclass would include all persons or entities who purchased IntraLinks common stock "pursuant or traceable to" the April 6, 2011 secondary offering with its allegedly misleading prospectus and registration statement.

*Class Certification Standard and Application*

To qualify for class certification, plaintiff must show by a preponderance of the evidence that the proposed class meets the requirements of Federal Rule of Civil Procedure 23.  *Teamsters Local 445 Freight Division Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-03 (2d Cir. 2008).  The proposed class must satisfy all four requirements of Rule 23(a), and at least one of the three tests in Rule 23(b).

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the class

representative are typical of those of the class, and (4) the class representative will fairly and adequately protect the interests of the class. Rule 23(b)(3), the provision of Rule 23(b) plaintiff relies on for this putative class certification, requires that (1) questions of law or fact common to the class predominate over questions affecting only individual members, and (2) a class action is superior to other available methods for adjudicating the controversy.

Defendants offer arguments against class certification under Rule 23(a), focusing on the typicality of the class representative's claims and the adequacy of the representative to argue for the class. Defendants' arguments as to typicality and adequacy concern law and fact that applies in the same way to the Exchange Act Class and the Securities Act Subclass.

Defendants also offer arguments against class certification under Rule 23(b)(3). These arguments contend that common issues do not predominate for all class members regarding the element of reliance in the Exchange Act claims. Different standards of reliance, which are not at issue here, attach to the Securities Act claims, so the Rule 23(b)(3) discussion does not apply to the Securities Act Subclass.

### Rule 23(a)

*(1) Numerosity*

Rule 23(a)(1) requires that the class be numerous. This requirement is satisfied when the class comprises so many members that

8

joining them all in the litigation would be impracticable.  Fed.R.Civ.P. 23(a).  In this Circuit, numerosity is presumed at 40 class members. *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir.1993).  In class actions alleging fraud in widely traded securities, common sense assumptions based on the number of outstanding shares may suffice to demonstrate numerosity.  *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 275 (S.D.N.Y.2008).

Here, where defendant had millions of shares outstanding during the class period, and defendants make no contrary argument, there is numerosity for both the class and subclass.

*(2) Commonality*

Rule 23(a)(2) requires that there be questions of law or fact common to the class.  This requirement is satisfied when an action raises questions of law or fact common to all members of the class, so that addressing those common questions will help efficiently resolve the proceeding.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

Plaintiff satisfies its burden by identifying several questions common to the class and subclass that could drive the resolution of the litigation.  These include, for example, whether defendants violated securities laws, whether defendants made misleading statements concerning IntraLinks' loss of the FDIC's business, and to what degree plaintiffs were harmed by those alleged wrongdoings.  Furthermore, defendant has declined to specifically dispute the commonality prong of

the class certification test, choosing to focus instead on the related typicality inquiry.

*(3) Typicality*

Rule 23(a)(3) requires that the claims or defenses of the class representative be typical of those of the class.  This requirement closely resembles the commonality requirement.  Both aim at ensuring that class treatment is a logical, fair, and efficient method of resolving the claims of all putative class members.  Typicality is satisfied where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  The test is not demanding, and the claims of the class representative need not be exact duplicates of all class members' claims. *In re Livent, Inc. Noteholder Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002).

Here, plaintiff argues that the class representative's claims satisfy typicality because they concern misleading statements and omissions that harmed each class member in the same way.  Defendants, however, contend that typicality is not satisfied because the lead plaintiff and class representative—the Fund—is vulnerable to "unique defenses which threaten to become the focus of the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000). Specifically, defendants suggest that IntraLinks shared material

10

nonpublic information with the Fund's investment managers.  If true, the Fund would not have been harmed in the same way as other class members because its investment managers had inside information that superseded the allegedly misleading public information upon which the rest of the class relied.

Defendants' argument, however, is too threadbare to defeat plaintiffs' showing of typicality.  Defendants point to several conferences between the Fund's investment managers and IntraLinks management. Some of these conferences are clearly irrelevant because they occurred before IntraLinks allegedly had reason to know that it would lose FDIC's business.  And at other conferences, there is simply no evidence that the Fund's investment managers received nonpublic information.  Courts have found that mere communications with insiders do not defeat typicality in securities class actions.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 482 (S.D.N.Y. 2002).  Furthermore, here, the evidence suggests the Fund's investment managers did not receive non-public information.  For example, one of the Fund's investment managers wrote an internal email—after defendants suggests he received inside information—stating that he "[does not] believe management lied in secondary."  Dulka Decl. Ex. L, p. 2.

Courts have rejected class representatives who are potentially vulnerable to unique defenses because other class members may be disserved if those defenses become a focus of the litigation.  *See, e.g.,*

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176, 180 (2d Cir. 1990).  But where, as here, the individualized
defenses against the class representative seem to rest on little more than
speculation, the risk of such disserve is minimal.  Plaintiff has proven
typicality by a preponderance of the evidence.

*(4) Adequacy*

Rule 23(a)(4) requires a showing that the class representative will
fairly and adequately protect the interests of other class members.
Importantly, the class representative's interests must not be antagonistic
to those of other class members.  *In re Flag Telecom Holdings, Ltd. Sec.
Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  The adequacy inquiry overlaps
with the typicality inquiry, so that a finding of typicality usually suggests
that the class representative will also satisfy the adequacy requirement.
*Pub. Employees' Retirement v. Merrill Lynch & Co.*, 277 F.R.D. 97, 109
(S.D.N.Y. 2011).

The Fund appears to be both motivated and well-positioned to
represent the rights and interests of class members.  Defendants do not
dispute that the Fund's counsel, Cohen Milstein, is highly experienced
and qualified to prosecute the class action.  Nor does defendant dispute
that the Fund stands to gain much from prosecuting the action: the
Fund lost more from its investment in IntraLinks ($4,250,862.00) than
any other class member, a fact the court found significant in appointing
it Lead Plaintiff in an order dated April 3, 2012.  *See* ECF at No. 35.

12

However, defendants argue that the Fund makes an inadequate class representative because it lacks familiarity with the litigation. Under Rule 30(b)(6) of the Federal Rules of Civil Procedure, defendants were entitled to depose a representative of the Fund on matters "known or reasonably available to the organization."  Defendants carried out such a deposition and discerned that the Fund's representative lacked a full understanding of the litigation.  Therefore, defendants contend that the Fund is too detached from the litigation to vigorously represent the interests of the class.

But the Fund's witness was not as ignorant as defendants say.  He displayed basic familiarity with the litigation's subject matter, the identities of the defendants, and the reasons for the Fund's involvement. More importantly, the Fund's witness made it clear that Fund counsel O'Donoghue & O'Donoghue have been actively monitoring the litigation and managing the Fund's relationship with class counsel Cohen Milstein. For an entity like the Fund, delegating management of securities litigation to trusted external counsel is not unreasonable.  These facts make the situation distinguishable from cases where class representatives do nothing beyond "lending [their] name to the lawsuit". *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2004).

The adequacy requirement is not demanding.  It is satisfied unless "the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the

13

interests of the class against the possibly competing interests of the attorneys." *Baffa*, 222 F.3d at 61.  In light of the competence of Cohen Milstein, the involvement of Fund counsel, the basic knowledge of the Fund's witness, and the Fund's strong interest in resolving this litigation in a manner favorable to the class, the court finds that the modest hurdle of adequacy is cleared.

### Rule 23(b)(3)

Having established that the proposed class meets the requirements of 23(a), plaintiff must still meet one of the three tests in Rule 23(b).  Here, plaintiff chooses to attempt certification under the test of Rule 23(b)(3).  To certify under Rule 23(b)(3), plaintiff must show both that "questions of law or fact common to Class Members predominate over any questions affecting only individual members," and that class treatment is superior to other available methods of adjudicating the controversy.  Fed.R.Civ.P. 23(b)(3).

Defendants do not contest plaintiff's arguments as to superiority, which the court accordingly accepts.  But defendants argue strenuously that the predominance requirement is not met.

*Predominance*

Plaintiff contends that common questions predominate for all members of the Exchange Act Class, observing that all members must establish the same elements of their private cause of action for deception

in connection with the sale of a security under Section 10(b) of the Securities Exchange Act of 1934.  These elements are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1192 (2013).

Only the fourth element of the cause of action is in dispute. Defendants protest that common issues do not predominate concerning the element of reliance.

*Presumption of Reliance*

Plaintiff argues that class members are entitled to a presumption of reliance on defendants' alleged misrepresentations and/or omissions under the "fraud on the market" doctrine.  The fraud on the market doctrine is a judicially crafted presumption of reliance on certain statements that are likely to mislead an entire market in an efficiently-traded stock.  The doctrine applies if the requirements of publicity, materiality, market efficiency, and market timing are met.  *See Basic v. Levinson*, 108 S.Ct. 978, 991 (1988).  Plaintiff also contends that class members are entitled to a presumption of reliance because omissions, rather than affirmative statements, form the core of the alleged fraud. *See Affiliated Ute Citizens of Utah v. United States*, 92 S.Ct. 1456, 1472 (1972).  Defendants contend that neither presumption applies.

15

Defendants' first salvo against the application on the fraud on the market doctrine is that the alleged misrepresentations did not impact IntraLinks' price.

If an alleged misrepresentation did not affect the market price of a stock, the fraud on the market presumption cannot apply.  Price impact is therefore a precondition to a Rule 10b-5 action such as this one. *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398, 2415 (2014). Defendants bear the burden to show a lack of price impact.  *McIntire v. China MediaExpress Holdings, Inc.*, No. 11 CIV 804, 2014 WL 4049896, at *13 (S.D.N.Y. Aug. 15, 2014).

Here, defendants do not carry that burden.  It is difficult to see why the alleged misstatement and omissions would not have impacted the share price.  Ample evidence in the record suggests that analysts and market participants, including the Fund's agents, found it significant when they learned that FDIC was reducing its usage of IntraLinks.  This undermines defendants' speculation that factors unrelated to the FDIC customer relationship exclusively caused the drop in IntraLinks' share price around May 11, 2011.  Defendants also highlight uncertainty about whether the decline in IntraLinks' share price on August 10, 2011 and November 9, 2011 were caused by corrective disclosures concerning the FDIC's business with IntraLinks.  But the reasons for the declines on those dates are likewise intertwined with IntraLinks' alleged misrepresentations concerning the FDIC.  On August 10, the market

16

likely inferred a connection between the loss of FDIC business and
IntraLinks' disclosure that it received an SEC subpoena.  And the decline
on November 9, 2011 may have represented the market's erasure of
earlier fraud, if market participants were processing both FDIC's
November 7 announcement that it was seeking a new VDR vendor, and
IntraLinks' November 8 statement that "since our last earnings call,
[FDIC] has informed us that beginning this month it will be using a
different vendor for its projects."  Defendant has not shown that
unrelated factors account for these price movements.

Defendants do not rebut plaintiff's specific arguments for the
efficiency of the market in IntraLinks shares.  All but conceding market
efficiency, they argue instead that if an efficient market is assumed, the
class period must be drawn more narrowly than plaintiff would like.

The court therefore finds that IntraLinks shares traded in an
efficient market during the proposed class period, and that defendants
have failed to rebut a presumption of class-wide reliance on the integrity
of the market.  The application of the *Affiliated Ute* doctrine need not be
decided here, because plaintiff has shown that the fraud on the market
doctrine applies, and common issues predominate concerning reliance
on defendants' alleged omissions or misrepresentations.

*The Exchange Act Class Period*

Defendants argue that the Exchange Act Class period should
exclude those who purchased IntraLinks stock after May 11, 2011

because on that date, the market became aware that FDIC was decreasing its IntraLinks usage.  Therefore, the argument goes, any purchasers after that date did not rely on the alleged misrepresentations, and common issues do not predominate as to those purchasers.  The argument is misplaced.

Defendants point to a swift decline in IntraLinks's share price following the earnings call and lowered market guidance on May 11, 2011.  On that earnings call, IntraLinks disclosed that a large Enterprise customer was significantly decreasing its usage of IntraLinks.  The following day, undisputedly, market analysts inferred that FDIC was reducing its usage of IntraLinks.  But defendants do not show that the alleged misleading statements or omissions were then fully cured: the decline in Intralinks' share price might have been larger if the market had known the full extent of IntraLinks' difficulties with FDIC. Defendants' declaration from Mary Dulka contains communications showing that Fund's investment managers believed, following the earnings call, that FDIC was decreasing IntraLinks usage due to a shrinking distressed bank portfolio and a correspondingly smaller need for VDRs.  *See* Dulka Decl., Ex. L.  But that was not the full truth, if FDIC was also dissatisfied with IntraLinks' pricing and seeking replacement vendors.  If, as plaintiff alleges, defendants misled the market to believe that FDIC was not seeking a replacement for IntraLinks

and was not dissatisfied, then a disclosure of FDIC's decrease in usage did not fully eliminate that deception.

Defendants' arguments concerning the proper class period belong more properly to the discussion of damages, not class certification. Individualized calculations of damages do not generally defeat the predominance requirement. *See Enea v. Bloomberg, L.P.*, No. 12 CIV 4656 (GBD)(FM), 2014 WL 1044027, at *21 (S.D.N.Y. Mar. 17, 2014). Presumably, if plaintiff prevails, class members who purchased or sold at different times during the class period will be entitled to significantly different recoveries. While calculating the proper damages based on the date of purchase and sale may be complicated, it does not demand excessive individual inquiry. Plaintiff's proposed determination of damages by event study appears to be a workable methodology of determining damages on a class-wide basis that conforms to its theory of liability, thus meeting the requirements of *Comcast Corp. v. Behrand*, 133 S.Ct. 1426 (2013).

*The Securities Act Subclass Limitation*

Defendants contend that the Securities Act Subclass must exclude aftermarket purchasers of securities from the April 6, 2011 secondary offering. The Securities Act Subclass members will make claims under Sections 11 and 12(a)(2) of the Securities Act of 1933. Aftermarket purchasers are those who bought the securities in the open market, rather than directly from IntraLinks.

The Section 11 claims provide no reason to exclude aftermarket purchasers.  To be sure, only those who "can trace their shares to the allegedly misleading registration statement" have standing in a Section 11 claim.  *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d. 189, 207 (S.D.N.Y. 2003).  But tracing is a merits issue that the court need not consider at the class certification stage.  *See In re Smart Technologies, Inc. Shareholder Litig.*, 295 F.R.D. 50, 61-62 (S.D.N.Y. 2013).

However, aftermarket purchasers lack standing to maintain a Section 12(a)(2) claim, because the securities sale was not made to them by means of oral communication or prospectus.  *See, e.g.*, *In re Smart Technologies*, 295 F.R.D. at 56-57.  Without standing, their claims under Section 12(a)(2) cannot succeed, and should not be certified as part of the class.  *See In re Flag Telecom Holdings*, 574 F.3d at 39.

Aftermarket purchasers are therefore excluded from the subclass with respect to claims brought under Section 12(a)(2).  They retain the possibility of obtaining relief through the Section 11 claims, and as members of the Exchange Act Class.

## Conclusion

Plaintiff's motion for class certification is granted.  The court certifies the following class and subclass:

"All persons and entities who purchased or acquired IntraLinks common stock during the period February 17, 2011 and November 11,

2011, inclusive, including a subclass of those persons or entities who purchased IntraLinks common stock pursuant or traceable to the company's registration statement and prospectus issued in connection with the April 6, 2011 offering and who were damaged thereby. Aftermarket purchasers are excluded from the subclass with respect to claims brought under Section 12(a)(2)."

The court also appoints Plumbers and Pipefitters National Pension Fund as representative of the class and subclass, and approves Cohen Milstein Sellers & Toll PLLC as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

This resolves the motion listed as document number 70 in this case, 11-cv-8861.

Dated: New York, New York
September 30, 2014

SO ORDERED

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/14