**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM D. WALLACE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTRALINKS HOLDINGS, INC., et al.,<br><br>Defendants. | Civil Action No. 11-cv-8861 (TPG) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Settlement") is made and entered into by and among (i) Lead Plaintiff, on behalf of itself and each of the Class Members, by and through their counsel of record in the Action; and (ii) Defendants, by and through their counsel of record in the Action.

This Settlement is intended by the Settling Parties to fully, finally and forever compromise, resolve, discharge and settle the Released Claims and result in the complete dismissal of this Action with prejudice, upon and subject to the terms and conditions herein.

**WHEREAS:**

A.    All terms with initial capitalization shall have the meanings ascribed to them in paragraph 1 below or as otherwise defined herein.

B.    On December 5, 2011, plaintiff William Wallace filed a class action complaint, Civil Action No. 11-cv-8861-TPG, against IntraLinks Holdings, Inc. ("IntraLinks" or the "Company"), and two of its corporate officers, J. Andrew Damico and Anthony Plesner (the "Officer Defendants"),  in the United States District Court for the Southern District of New York (the "Court" or "District Court"), on behalf of a class comprising purchasers of the Company's common stock between February 17, 2011 and November 10, 2011, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5 (the "Exchange Act").  The case was assigned to the Honorable Thomas P. Griesa.

C.    On December 27, 2011, plaintiff Michael Thaler filed a virtually identical class action against the same defendants in the same Court.  On April 3, 2012, the Court consolidated the two actions, appointed Plumbers and Pipefitters National Pension Fund as Lead Plaintiff, and approved Lead Plaintiff's selection of Cohen Milstein Sellers & Toll PLLC as Lead Counsel in the consolidated action (the "Action").

D.    On June 15, 2012, Lead Plaintiff filed a Consolidated Class Action Complaint (the "Complaint") in this Action.  The Complaint added as Defendants former IntraLinks officer

and current IntraLinks director Patrick J. Wack, Jr. (Mr. Wack, together with IntraLinks and the Officer Defendants, are referred to herein as the "IntraLinks Defendants"); current IntraLinks directors Brian J. Conway, Peter Gyenes, Thomas Hale, Habib Kairouz and Robert C. McBride and former IntraLinks director Harry D. Taylor (together, the "Director Defendants"); and Morgan Stanley & Co. Incorporated, Jefferies LLC (f/k/a Jefferies & Company, Inc.), Lazard Capital Markets LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc. and Pacific Crest Securities LLC (together, the "Underwriter Defendants"), the six underwriters of the Company's April 6, 2011 offering of common stock ("Secondary Offering").  The Complaint alleged:  (1) that IntraLinks and the Officer Defendants made material misrepresentations and omissions in violation of Section 10(b) and Rule 10b-5 of the Exchange Act; (2) that the Officer Defendants are liable for any primary violation of the Exchange Act as alleged control persons under Section 20(a) of the Exchange Act; (3) that all Defendants made or were otherwise liable for material misrepresentations and omissions in the registration statement and prospectus for the Secondary Offering in violation of Sections 11 and 12(a)(2) of the Securities Act of 1933 ("Securities Act"); and (4) that the Officer Defendants, Mr. Wack, and the Director Defendants are liable for any primary violation of the Securities Act as alleged control persons under Section 15 of the Securities Act.

E.      On July 31, 2012, Defendants moved to dismiss the Complaint.

F.      On May 8, 2013, the Court issued an opinion granting in part and denying in part Defendants' motions to dismiss.

G.      On June 28, 2013, Defendants answered the Complaint, denying all allegations of wrongdoing or liability therein.

H.      On February 18, 2014, Lead Plaintiff filed its motion for class certification ("Class Certification Motion"), which Defendants opposed.  On September 30, 2014, the Court issued an opinion certifying a class of all persons and entities who purchased or acquired IntraLinks stock between February 17, 2011 and November 11, 2011 and a subclass of persons or entities who purchased IntraLinks stock pursuant or traceable to the Company's April 6, 2011

Secondary Offering, certifying Lead Plaintiff as Class Representative, and appointing Cohen Milstein Sellers & Toll PLLC as Lead Counsel (the "Class Certification Decision").

I.      On October 14, 2014, Defendants filed a petition under Federal Rule of Civil Procedure 23(f) with the Second Circuit requesting interlocutory appeal of the District Court's Class Certification Decision, which the Second Circuit denied on December 30, 2014.

J.      On October 6, 2014, the Court so-ordered the parties' Second Amended Joint Stipulation and Proposed Scheduling Order ("Scheduling Order").  Among other things, the Scheduling Order extended the deadline for completion of fact discovery to February 27, 2015.

K.      The parties have essentially completed fact discovery.  Defendants produced over a million pages of documents, and Lead Plaintiff took twenty-one depositions.  Additionally, Defendants served discovery requests on Lead Plaintiff and several third parties, and deposed Lead Plaintiff and a confidential witness cited in the Complaint.

L.      On April 14, 2015, Lead Plaintiff, Lead Counsel, Defendants, IntraLinks' insurers, and Defendants' Counsel participated in a mediation under the auspices of Jed D. Melnick, Esq. of JAMS.  As a result of the arms' length negotiations at that mediation, on May 13, 2015, the parties (including IntraLinks' insurers) agreed to settle the Action for $14 million, subject to documentation.

M.      Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that (i) it is in the best interests of the Class to enter into this Settlement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Class and (ii) the Settlement set forth herein is fair, reasonable and adequate and in the best interests of Class Members.

N.      Defendants believe that they are not liable for the claims asserted against them in the Action and that they have good and meritorious defenses thereto. They have nevertheless agreed to enter into this Settlement to avoid further expense, inconvenience, and the distraction

of burdensome and protracted litigation, and thereby to put to rest this controversy and avoid the risks inherent in litigation.

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel of record, that, subject to the approval of the District Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the PSLRA and other conditions set forth herein, in consideration of the benefits flowing to the Settling Parties hereto, that the Action and all Released Claims as against the Released Parties and Related Parties shall be fully, finally and forever compromised, settled, released, discharged and dismissed with prejudice, upon and subject to the following terms and conditions:

## DEFINITIONS

1.     As used in this Settlement, the following terms shall have the meanings specified below.

(a)     "Authorized Claimant" means a Class Member that timely submits a valid Proof of Claim Form to the Claims Administrator in accordance with the requirements established by the Court, and that is approved by the Claims Administrator for payment from the Net Settlement Fund.

(b)     "Claim" means a claim submitted by a Class Member to the Claims Administrator for payment pursuant to the Plan of Allocation.

(c)     "Claims Administrator" means Kurtzman Carson Consultants, LLC.

(d)     "Class" means the Class certified by the Court in its Class Certification Decision dated September 30, 2014 in this Action, *i.e.*, all persons and entities who purchased or acquired IntraLinks common stock between February 17, 2011 and November 11, 2011, inclusive, including a subclass of those persons or entities who purchased IntraLinks common stock pursuant or traceable to the Company's registration statement and prospectus issued in connection with the April 6, 2011 Secondary Offering and who were damaged thereby. Excluded from the Class are: Defendants; members of the immediate family of any Defendant; any person, firm, trust, corporation, officer, director or other individual or entity in which any

Defendant has or had a controlling interest during the Class Period; the officers and directors of any Defendant during the Class Period; and legal representatives, agents, executors, heirs, successors, or assigns of any such excluded person or entity. Any person or entity that timely and validly requests exclusion from the Class pursuant to and in accordance with the terms of the Preliminary Approval Order is also excluded from the Class.[1]

(e)     "Class Certification Decision" means this Court's September 30, 2014 decision granting Lead Plaintiff's Class Certification Motion and certifying a class of all persons and entities who purchased or acquired IntraLinks common stock between February 17, 2011 and November 11, 2011, inclusive, and a subclass of persons or entities who purchased IntraLinks common stock pursuant or traceable to the Company's April 6, 2011 Secondary Offering, certifying Lead Plaintiff as Class Representative, and appointing Cohen Milstein Sellers & Toll PLLC as Lead Counsel.

(f)     "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to eligible Class Members.

(g)     "Class Member" means a person or entity that is a member of the Class.

(h)     "Class Period" means the period from February 17, 2011 to November 11, 2011, both dates inclusive.

(i)     "Defendants" means IntraLinks Holdings, Inc., J. Andrew Damico, Anthony Plesner, Patrick J. Wack, Jr., Brian J. Conway, Peter Gyenes, Thomas Hale, Habib Kairouz, Robert C. McBride, Harry D. Taylor, Morgan Stanley & Co. Incorporated, Jefferies LLC (f/k/a

---

1.  In the event this Settlement is terminated, or a Judgment and approval of the Settlement and dismissal of the Action for any reason does not occur, the Settling Parties reserve all their rights regarding class certification in the Action; Defendants reserve their rights to seek partial or full de-certification of the Class; and neither Lead Plaintiff nor Defendants shall refer to this Settlement in support of or in opposition to any motion for de-certification of the Class, or in support of or in opposition to any allegation or argument on the merits.

Jefferies & Company, Inc.), Lazard Capital Markets LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc. and Pacific Crest Securities LLC.

(j)     "Defendants' Counsel" means the law firms of Goodwin Procter LLP; Skadden, Arps, Slate, Meagher & Flom LLP; and Weil, Gotshal & Manges LLP.

(k)     "Effective Date" means the first day following the day on which the Settlement shall become effective as set forth in ¶ 35 below.  Lead Counsel shall advise Defendants' Counsel and the Claims Administrator promptly after it has determined that it believes the Effective Date has occurred.

(l)     "Escrow Account" means an escrow account mutually agreeable to the Settling Parties, established, maintained, and controlled by the Escrow Agent, subject to the Court's supervisory authority, into which Defendants shall deposit or cause to be deposited the Settlement Amount.

(m)     "Escrow Agent" means Eagle Bancorp, Inc., or a third party financial services company designated by the Settling Parties to serve as escrow agent.

(n)     "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in all material respects and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to a Class Distribution Order, a Plan of Allocation, or to the Court's award of Lead Counsel fees shall not in any way delay or affect the time set forth above for the Judgment to become Final.

(o)      "<u>Final Approval Hearing</u>" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement, Lead Counsel's request for an award of attorneys' fees and reimbursement of both litigation expenses and Lead Plaintiff's expenses.

(p)      "<u>IntraLinks' Counsel</u>" means Goodwin Procter LLP.

(q)      "<u>IntraLinks Defendants</u>" means IntraLinks Holdings, Inc., J. Andrew Damico, Anthony Plesner, and Patrick J. Wack, Jr.

(r)      "<u>Judgment</u>" means the order of final judgment to be entered by the Court which, subject to the approval of the Court, shall be substantially in the form attached hereto as Exhibit B.

(s)      "<u>Lead Counsel</u>" means the law firm of Cohen Milstein Sellers & Toll PLLC.

(t)      "<u>Lead Plaintiff</u>" means Plumbers and Pipefitters National Pension Fund.

(u)      "<u>Litigation Expenses</u>" means the reasonable costs and expenses incurred by Lead Counsel in connection with commencing and prosecuting the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund.  Litigation Expenses may also include reimbursement of the reasonable costs and expenses (including lost wages) of Lead Plaintiff in accordance with 15 U.S.C. § 77z-1(a)(4).

(v)      "<u>Net Settlement Fund</u>" means the Settlement Fund less:  (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the District Court.

(w)      "<u>Notice</u>" means the Notice of Pendency of Class Action, Preliminary Approval Order and Proposed Settlement, Final Approval Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (substantially in the form attached hereto as Exhibit A-1), which is to be sent to members of the Class.

(x)      "<u>Notice and Administration Costs</u>" means the costs, fees and expenses that are reasonably incurred by the Claims Administrator in connection with (i) providing notice to the Class; and (ii) administering the Claims process, including, without limitation, the actual costs of

publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with identifying Class Members and providing Notice and processing the submitted claims, and the reasonable fees, if any, of the Escrow Agent; provided that in no event shall the aggregate amount of all such costs, fees and expenses exceed $250,000.   To the extent that Notice and Administration Costs exceed $250,000, they may be paid only pursuant to further order of the Court and, consistent with ¶ 10, only out of the Settlement Fund.  In the event that the Settlement is terminated pursuant to the terms of this Settlement, all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid to the Defendants.

(y)      "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in ¶ 16 below and in the Notice, or such other plan of allocation that the Court approves.  The Plan of Allocation is not part of the Settlement, and Defendants shall have no responsibility for the Plan of Allocation or its implementation, and no liability with respect thereto.

(z)      "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement, and directing that Notice be provided to the Class, which, subject to the approval of the Court, shall be substantially in the form attached hereto as Exhibit A.

(aa)      "Proof of Claim Form" means the form provided to Class Members by the Claims Administrator for purposes of submitting a Claim, substantially in the form attached hereto as Exhibit A-3.

(bb)      "Released Claims" means any and all actions, causes of action, claims (including "Unknown Claims," as defined in ¶ 1 (ll) herein), duties, debts, demands, rights, disputes, suits, matters, damages, losses, obligations, proceedings, issues, judgments, and liabilities of every nature and description whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, liquidated or unliquidated, accrued and unaccrued, matured

or unmatured, at law or in equity, whether class, derivative, or individual in nature, whether or not concealed or hidden, which now exist, or heretofore have existed, or can, shall or may exist, whether arising under federal, state, common or foreign law or at equity, that (a) Lead Plaintiff or any Class Member has asserted in this Action, or could have asserted in the Action or in any other proceeding or forum that concern, arise out of, refer to, are based upon, or are related in any way to the allegations, transactions, facts, matters, occurrences, representations, statements, or omissions alleged, involved, set forth, or referred to in the Complaint, (b) would have been barred by *res judicata* or collateral estoppel had the Action been fully litigated to a final judgment, or (c) could have been, or in the future could be, asserted in any forum or proceeding or otherwise by any Class Member that relate to the purchase, sale, acquisition or holding of IntraLinks common stock during the Class Period; *provided however*, that the term "Released Claims" shall not include the claims currently asserted by the existing plaintiffs in the pending derivative actions *Horbal v. IntraLinks Holdings, Inc. et al.*, No. 651228/2012 (Sup. Ct. of N.Y., N.Y. Cnty. 2012) (appeal filed) and *Levine v. IntraLinks Holdings, Inc.*, No. 651772/2015 (Sup. Ct. of N.Y., N.Y. Cnty. 2015).

(cc)    "Released Party" and "Released Parties" means each Defendant and his, her or its respective directors, officers, employees, partners, members, principals, agents, shareholders, related or affiliated entities, attorneys, accountants, auditors, advisors, trustees, consultants, underwriters, investment advisors, personal or legal representatives, predecessors, successors, divisions, joint ventures, assigns, spouses, heirs, executors, personal representatives, associates, any members of their immediate families, marital communities, or any trusts for which any of them are trustees, settlers, or beneficiaries, or anyone acting or purporting to act for or on behalf of any of them or their successors.

(dd)    "Related Parties" means each Defendant's insurers, co-insurers, and reinsurers.

(ee)    "Settlement" means this Stipulation and Agreement of Settlement and the settlement contained herein.

(ff)    "Settlement Amount" means fourteen million U.S. dollars ($14,000,000.00).

(gg)    "Settlement Fund" means the Settlement Amount plus any interest earned thereon after it is deposited into the Escrow Account.

(hh)    "Settling Parties" means Defendants and Lead Plaintiff on behalf of itself and the Class.

(ii)    "Summary Notice" means the Summary Notice of the Pendency of Class Action and Proposed Settlement, Preliminary Approval Order, Settlement Fairness Hearing, and Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, which shall be substantially in the form attached hereto as Exhibit A-2, to be published as set forth in the Preliminary Approval Order.

(jj)    "Taxes" means any taxes due and payable with respect to the income earned by the Settlement Fund, including any interest or penalties thereon.

(kk)    "Tax Expenses" means any reasonable expenses and costs incurred in connection with the payment of Taxes or the preparation of tax returns, including, without limitation, reasonable expenses of tax attorneys and/or accountants and/or other advisors and reasonable expenses relating to the filing of or failure to file all necessary or advisable tax returns.

(ll)    "Unknown Claims" means any and all Released Claims that Lead Plaintiff and/or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties and the Related Parties, which if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties and the Related Parties, or might have affected his, her or its decision not to object to this Settlement or not exclude himself, herself or itself from the Class.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff expressly waives, and each Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code § 1542, and of any U.S. federal or state law, or principle of common law or the law of any foreign jurisdiction, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides, in relevant part:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and other Class Members, or certain of them, may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and the Class Members, and each of them, upon the Effective Date, by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, claims relating to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

## SETTLEMENT CONSIDERATION

2.     IntraLinks (or its insurers), on behalf of all Defendants, shall pay Fourteen Million Dollars ($14,000,000.00) into the Escrow Account no later than ten (10) days after entry of a Preliminary Approval Order by the Court. Lead Counsel shall provide IntraLinks' Counsel with full and complete account information necessary for such payment and an executed Form W-9 prior to submission of the Preliminary Approval Order.  If the Settlement Amount is not deposited into the Escrow Account by such date, Lead Plaintiff reserves the right to either: (i) move to enforce the Settlement, including seeking interest on any unpaid amount; or (ii) terminate the Settlement, in which case ¶ 36 below shall govern.

## RELEASES

3.     Upon the Effective Date, Lead Plaintiff and each of the Class Members (on behalf of themselves and their respective heirs, executors, trustees, administrators, predecessors, successors and assigns) shall be deemed to have and by operation of the Judgment shall have fully, finally and forever waived, released, relinquished, discharged and dismissed each and

every Released Claim against each and every Released Party and Related Party (whether or not Lead Plaintiff or such Class Member submits a Proof of Claim Form).

4.      With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff expressly waives, and each Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code § 1542, and of any U.S. federal or state law, or principle of common law or the law of any foreign jurisdiction, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides, in relevant part:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and other Class Members, or certain of them, may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and the Class Members, and each of them, upon the Effective Date, by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, claims relating to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and Class Members by law and operation of the Judgment shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

5.      Upon the Effective Date, Lead Plaintiff and each of the Class Members, and anyone claiming through or on behalf of any of them, in accordance with the terms of the

proposed Judgment attached hereto as Exhibit B, are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Claim (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of this Action against any Released Party or Related Party.

6.     Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Lead Plaintiff, each and all of the Class Members, and Lead Counsel from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims.

<u>**USE AND TAX TREATMENT OF SETTLEMENT FUND**</u>

7.     The Settlement Fund shall be held and invested in the Escrow Account as provided in ¶ 8 hereof.  If the Settlement becomes Final, any interest earned on the Settlement Fund shall be for the benefit of the Class.  If the Settlement does not become Final and the Settlement is terminated, the Settlement Fund shall be returned pursuant to written instructions from IntraLinks' Counsel, together with any interest earned on the Settlement Fund, less any Notice and Administration Costs actually incurred.

8.     The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States government or an agency thereof (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in investments that are insured by the Federal Deposit Insurance Corporation.  The Released Parties, the Related Parties and Defendants' Counsel shall have no responsibility for, interest in, or liability with respect to the investment decisions of the Escrow Agent.  The Settlement Fund shall bear all risks related to investment of the Settlement Amount.

9.     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Settlement.

10.     Subject to the terms and conditions of this Settlement, the Settlement Fund shall be used to pay:  (i) Taxes and Tax Expenses; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court.  In no event shall the Released Parties or the Related Parties bear any responsibility for any fees, costs or expenses beyond payment of the Settlement Amount.

11.     After (i) the Judgment becomes Final, and (ii) entry by the Court of a Class Distribution Order approving distribution of the Net Settlement Fund to the Class, the Claims Administrator shall distribute the Net Settlement Fund to Authorized Claimants in accordance with the terms of such Class Distribution Order; provided, however, that any amounts in the Escrow Account necessary for payment of Taxes and Tax Expenses and/or Notice and Administration Costs shall remain in the Escrow Account for such purpose.

12.     Except as provided herein, the Net Settlement Fund shall remain in the Escrow Account prior to the distribution.  All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed or returned pursuant to the terms of this Settlement.

13.     The Settling Parties agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶ 14 herein.  The Claims Administrator shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes and Tax Expenses owed with

respect to the Settlement Fund, and is authorized to withdraw, without prior order of the Court, from the Settlement Fund such amounts as are necessary to pay Taxes and Tax Expenses. Defendants will provide to the Claims Administrator the statement described in Treasury Regulation § 1.468B-3(e).  The Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation-back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

14.     All Taxes (including any interest or penalties) and Tax Expenses shall be considered to be a cost of administration of the Settlement and shall be paid out of the Settlement Fund.  The Released Parties and the Related Parties shall not have any responsibility for, and no liability with respect to, payment of any such Taxes or Tax Expenses, and shall have no responsibility for, and no liability with respect to, the acts or omissions of the Claims Administrator, Lead Counsel or their agents, with regard to Taxes and Tax Expenses.  The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Settlement with regard to Taxes and Tax Expenses.

15.     If all conditions of the Settlement are satisfied and the Judgment is entered and becomes Final, no portion of the Settlement Fund will be returned to Defendants, irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.  If any portion of the Net Settlement Fund remains following distribution pursuant to ¶ 23 and is of such an amount that in the discretion of the Claims Administrator it is not cost effective or efficient to redistribute to the Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes and Tax Expenses, shall be

donated to a non-profit charitable organization selected by Lead Plaintiff and approved by the Court.

## PLAN OF ALLOCATION

16.    The Net Settlement Fund shall be distributed to Authorized Claimants in accordance with a Plan of Allocation prepared by Lead Counsel, in conjunction with Lead Plaintiff's damages expert, and set forth in Exhibit A-1.  The Released Parties, Related Parties, and Defendants' Counsel have had no role in the preparation of the Plan of Allocation.

17.    The finality of the Settlement shall not be conditioned on any ruling by the District Court concerning the Plan of Allocation or any award of attorneys' fees or reimbursement of Litigation Expenses.  Any order or proceeding relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the Effective Date or the effectiveness or finality of the Judgment and the release of the Released Claims. There shall be no distribution of any of the Settlement Fund to any Class Member until the Plan of Allocation is finally approved and such order of approval is affirmed on appeal and/or is no longer subject to review by appeal or *certiorari*, and the time for any petition for rehearing, appeal, or review, by *certiorari* or otherwise, has expired.  Again, and for the avoidance of doubt, the Released Parties, Related Parties and Defendants' Counsel have no responsibility for, and no liability with respect to, the investment or distribution of the Settlement Amount.

18.    The allocation of the Net Settlement Fund among Authorized Claimants is a matter separate and apart from the proposed Settlement between Defendants and Lead Plaintiff, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Plan of Allocation is not a necessary term of this Settlement, and it is not a condition of this Settlement that any particular plan of allocation be approved by the Court.  None of the Settling Parties may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action.  The Released Parties and the Related Parties shall have no

responsibility for, and no liability with respect to, the allocation of the Net Settlement Fund, nor shall they object to the Plan of Allocation proposed by Lead Plaintiff.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

19.     Lead Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees and Litigation Expenses not to exceed 28% of the Settlement Fund (*i.e.*, up to $3,920,000). Litigation Expenses may include reimbursement of the expenses of Lead Plaintiff up to $600,000 and Lead Plaintiff's expenses up to $18,500 in accordance with 15 U.S.C. § 77z-1(a)(4) and.   Attorneys' fees and Litigation Expenses are not the subject of any agreement between the Settling Parties other than what is set forth in this Settlement.

20.     The Released Parties and the Related Parties will take no position on Lead Counsel's request for attorneys' fees or Litigation Expenses, and shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses that the Court may award.

21.     The procedure for and amounts of any award of attorneys' fees and Litigation Expenses, and the allowance or disallowance by the Court thereof, shall not be a condition of the Settlement.  Lead Counsel shall request that its application for an award of attorneys' fees and Litigation Expenses be considered by the Court separately from the Court's consideration of the fairness and adequacy of the Settlement.  Any order or proceedings relating to such request, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect the release of the Released Claims.  The finality of the Settlement shall not be conditioned on any ruling by the Court concerning Lead Counsel's application for attorneys' fees and Litigation Expenses.

22.     Within ten (10) days after both the Judgment and an order by the Court approving Lead Counsel's attorneys' fees and Litigation Expenses (the "Fee and Expense Order") become Final, any awarded attorneys' fees and Litigation Expenses shall be paid to Lead Counsel from the Escrow Account.  Such attorneys' fees and Litigation Expenses awarded by the Court may also be paid following entry of the Judgment and the Fee and Expense Order, notwithstanding

the existence of or pendency of any appeal or collateral attack on the Settlement or any part thereof or the Fee and Expense Order.  In the event that the Effective Date does not occur, or the Judgment or the Fee and Expense Order is reversed or modified by a Final, non-appealable order, or the Settlement is terminated or canceled for any reason, and in the event that attorneys' fees and Litigation Expenses have been paid out of the Escrow Account to any extent, then Lead Counsel shall be obligated and do hereby agree, within ten (10) days from receiving notice from Defendants' Counsel or from the Court, to refund to the Escrow Account such attorneys' fees and Litigation Expenses that have been paid, plus interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account.

## ADMINISTRATION OF THE SETTLEMENT

23.     The Claims Administrator, subject to the supervision of Lead Counsel and the jurisdiction of the Court, shall administer and calculate the Claims submitted by Class Members, oversee distribution of the Net Settlement Fund to Authorized Claimants, and perform all claims administration procedures necessary or appropriate in connection therewith.  The Claims Administrator shall receive and administer Claims in accordance with the Plan of Allocation approved by the Court.  The proposed Plan of Allocation is set forth in the Notice attached hereto as Exhibit A-1.

24.     The Released Parties and the Related Parties shall have no liability, obligation or responsibility whatsoever to any person, including, but not limited to, Class Members, the Escrow Agent, or the Claims Administrator, in connection with the administration of the Settlement, the processing of claims, or the disbursement of the Net Settlement Fund.

25.     Lead Counsel shall cause the Claims Administrator to mail the Notice to those Class Members who may be identified through the records maintained by or on behalf of IntraLinks, and to publish the Summary Notice, pursuant to the terms of the Preliminary Approval Order entered by the Court.

26.     Any Class Member who does not timely submit a valid Proof of Claim Form by the deadline set by the Court will not be entitled to receive any distribution from the Net

Settlement Fund but will nevertheless be bound by all of the terms of the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party or Related Party concerning any Released Claim.

27.     By submitting a Claim, a Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the releases and bar order provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to their status as a Class Member and the validity and amount of their Claim.  No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Proof of Claim Forms.

28.     Lead Counsel will apply to the Court, with reasonable notice to the Defendants, for a Class Distribution Order, *inter alia*:  (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding Notice and Administration Costs from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

29.     Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Class Members.  All Class Members who did not submit a Claim or whose Claim was not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any Released Party concerning any Released Claim.

30.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## REQUESTS FOR EXCLUSION

31.     A person or entity requesting exclusion from the Class must timely provide the following information to the Claims Administrator:  (i) name; (ii) address; (iii) telephone number; (iv) identity of the security purchased (or otherwise acquired) or sold; (v) prices or other consideration paid or received for such security; (vi) the date of each purchase or sale transaction; and (vii) a statement that the person or entity wishes to be excluded from the Class. Unless otherwise ordered by the Court, any Class Member who does not timely submit a written request for exclusion as provided by this section shall be bound by the Settlement.  Lead Plaintiff shall request that any requests for exclusion must be postmarked no later than twenty-eight (28) days prior to the Final Approval Hearing.

32.     The Claims Administrator shall scan and electronically send copies of all requests for exclusion in PDF format (or such other format as shall be agreed) to Defendants' Counsel and to Lead Counsel expeditiously (and not more than three (3) business days) after the Claims Administrator receives such a request.  Lead Counsel will include in its motion in support of final approval of the Settlement a list of all persons or entities who have requested exclusion from the Class, and shall certify that copies of all requests for exclusion received by the Claims Administrator have been provided to Defendants' Counsel.

## PRELIMINARY APPROVAL OF THE SETTLEMENT

33.     Promptly after execution of this Settlement, Lead Plaintiff, by and through Lead Counsel, with Defendants' Counsel's consent, shall submit the Settlement together with its Exhibits to the Court and shall move for entry of the Preliminary Approval Order, among other things, preliminarily approving the Settlement, approving the contents and method of distribution of the Notice and Summary Notice, and setting a date for the Final Approval Hearing.

## JUDGMENT APPROVING THE SETTLEMENT

34.     Lead Plaintiff, by and through Lead Counsel, with Defendants' Counsel's consent, shall request that the Court, if it approves the Settlement following the Final Approval Hearing, enter the Judgment.  The Settlement is expressly conditioned upon, among other things,

the entry of a Judgment substantially in the form attached hereto as Exhibit B and in all respects consistent with this Settlement.

**<u>EFFECTIVE DATE OF THE SETTLEMENT, AND TERMINATION</u>**

35.     The Effective Date of the Settlement shall be the first date by which all of the following have occurred:

(a)     The Court has entered the Preliminary Approval Order;

(b)     IntraLinks (or its insurers) shall have paid the Settlement Amount into the Escrow Account;

(c)     Defendants have not exercised their option to terminate the Settlement pursuant to ¶ 37 herein;

(d)     The Court has approved the Settlement following notice to the Class and the Final Approval Hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure, and has entered the Judgment; and

(e)     The Judgment has become Final, as defined in ¶ 1 (n) herein.

36.     Defendants and Lead Plaintiff each shall have the right to terminate the Settlement by providing written notice of their election to do so to the other within twenty (20) days of the date on which: (a) the Court declines to enter the Preliminary Approval Order in any material respect; (b) the Court refuses to grant final approval of this Settlement or any material part of it; (c) the Court declines to enter the Judgment in any material respect; (d) the Effective Date of the Settlement does not occur; or (e) the payment of the Settlement Amount is not satisfied in accordance with the terms herein.  In addition, Defendants may also terminate the Settlement in accordance with ¶ 37.  The foregoing list is not intended to limit or impair the Settling Parties' rights under the law of contracts of the State of New York with respect to any breach of this Settlement.  In the event the Settlement is terminated, the provisions of ¶¶ 7, 8, 9, 12, 22, 24, 38, 39, and 45 shall survive termination.

37.     Defendants shall have the option to terminate the Settlement in the event that the the aggregate number of total shares purchased or acquired during the Class Period  by Class

Members who would otherwise be entitled to participate in the Settlement as Class Members, but who timely and validly request exclusion in accordance with the terms of this Settlement, equals or exceeds the threshold (the "Opt-Out Threshold") as calculated pursuant to a separate agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants' Counsel, which is incorporated by reference into this Settlement.  The Opt-Out Threshold may be disclosed *in camera* to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the confidentiality of the Opt-Out Threshold.

38.     Except as otherwise provided herein, in the event the Settlement is terminated, the Settling Parties reserve their rights to proceed in all respects as if this Settlement had not been entered into and without any prejudice in any way from the negotiation, fact or terms of this Settlement; provided, however, that the Settling Parties will in good faith revisit the Scheduling Order for the completion of discovery and other pretrial proceedings and for the trial of this Action.

## NO ADMISSION OF WRONGDOING

39.     Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Settlement, including Exhibits, all negotiations, discussions, drafts and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

(a)     shall not be offered or received against the Released Parties, the Related Parties, Lead Plaintiff or the other Class Members as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of the Released Parties or the Related Parties or by Lead Plaintiff or the other Class Members with respect to the truth of any fact alleged by Lead Plaintiff or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been

asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Released Parties;

(b)    shall not be offered or received against the Released Parties or the Related Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Released Party or Related Party, or against Lead Plaintiff or any of the other Class Members as evidence of any infirmity in the claims of Lead Plaintiff and the other Class Members;

(c)    shall not be offered or received against the Released Parties, Related Parties, Lead Plaintiff or the other Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Settlement, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if this Settlement is approved by the Court, the Released Parties and Related Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)    shall not be construed against the Released Parties, Related Parties, Defendants' Counsel, Lead Counsel or Lead Plaintiff or the other Class Members as an admission or concession that the consideration to be paid hereunder represents the amount which could be or would have been recovered after trial; and

(e)    shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiff or the other Class Members or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

40.    Defendants have denied and continue to deny each and all of the claims and contentions alleged in the Complaint and affirm that they have acted properly and lawfully at all times. Defendants have denied expressly and continue to deny all allegations of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or

that could have been alleged, in the Action and deny that they ever engaged in or committed any wrongdoing, improper conduct, violation of law, or breach of duty.  Defendants also have denied and continue to deny, inter alia, that there were any materially false or misleading statements or material omissions in any of Defendants' public statements, including their filings with the SEC, and that Lead Plaintiff or any Class Member has suffered damage or harm of any kind.  In addition, Defendants maintain that they had and have meritorious defenses to all claims alleged in the Action.

## MISCELLANEOUS PROVISIONS

41.     All of the Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

42.     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by the Lead Plaintiff or any other Class Members in the Action or with respect to all Released Claims.  Except in the event of termination of this Settlement, Lead Plaintiff and Defendants agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Settling Parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with their respective experienced legal counsel.

43.     This Settlement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their successors-in-interest.

44.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

45.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of any of the Released Parties or Related Parties; or (b) is or may be deemed to be or may be used

as an admission or evidence of any fault or omission of any of the Released Parties or Related Parties in any civil, criminal or administrative proceeding in any court, any arbitration proceeding or any administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce the Settlement or the Judgment.

46.    The waiver by one party of any breach of this Settlement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement.

47.    This Settlement and its Exhibits constitute the entire agreement among the Settling Parties, and no representations, warranties or inducements have been made to any party concerning this Settlement or its Exhibits, other than the representations, warranties and covenants contained and memorialized in such documents.

48.    This Settlement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

49.    Lead Plaintiff agrees that it will use its best efforts to obtain all necessary approvals of the Court required by this Settlement, and the Defendants agree to provide such support as may be reasonably requested by Lead Plaintiff or Lead Counsel.

50.    Each signatory to this Settlement represents that he or she has authority to sign this Settlement on behalf of Lead Plaintiff or Defendants, as the case may be, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement to effectuate its terms.

51.    This Settlement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto, including all Released Parties, Related Parties and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate or reorganize.

52.    Notices required by this Settlement shall be submitted either by any form of overnight mail, electronic e-mail, facsimile, or in person to each of the signatories below.

53.     The administration, consummation and enforcement of the Settlement shall be under the authority of the Court and the Settling Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders, providing for awards of attorneys' fees and Litigation Expenses, and enforcing the terms of the Settlement.

54.     The construction, interpretation, operation, effect and validity of this Settlement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to that State's choice-of-law principles, except to the extent that federal law requires that federal law govern.

55.     To the extent there are disputes regarding the interpretation of any term of this Settlement, the Settling Parties will attempt to resolve any such dispute in good faith. If the Settling Parties fail to resolve the dispute, or in the event of a breach of the terms of the Settlement, any non-breaching Settling Party shall be entitled to bring an action seeking to enforce those provisions, and the exclusive forum for any such action shall be this Court.  The prevailing Settling Party in any such action to enforce these provisions of the Settlement shall be entitled to recover their reasonable attorneys' fees and expenses incurred in connection with remedying the breach.

56.     This Settlement shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Settlement.

57.     All time periods set forth in this Settlement will be computed in calendar days and pursuant to the terms of Rule 6(a) of the Federal Rules of Civil Procedure.

IN WITNESS WHEREOF, the Settling Parties hereto have caused this Settlement to be executed, by their duly authorized attorneys as of July 30, 2015.

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*Carol V. Gilden*
_____
Carol V. Gilden, Esq.
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

Kenneth M. Rehns, Esq.
88 Pine Street, 14th Fl.
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
krehns@cohenmilstein.com

Steven J. Toll, Esq.
Joshua S. Devore, Esq.
E. Aniskevich, Esq.
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
eaniskevich@cohenmilstein.com
*Attorneys for Lead Plaintiff and the Class*

**GOODWIN PROCTER LLP**

_____
Mark Holland, Esq.
Mary K. Dulka, Esq.
Valerie A. Haggans, Esq.
Charles A. Brown, Esq.
Erin V. Klewin, Esq.
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
mholland@goodwinprocter.com
mdulka@goodwinprocter.com
vhaggans@goodwinprocter.com
cbrown@goodwinprocter.com
eklewin@goodwinprocter.com

*Attorneys for the IntraLinks Defendants*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

_____
Jay B. Kasner, Esq.
James R. Carroll, Esq.
David S. Clancy, Esq.
Christopher G. Clark, Esq.
Four Times Square
New York, New York 10036
Tel.: (212) 735-3000
—and—
500 Boylston Street
Boston, MA 02116
Tel.: (617) 573-4800
jay.kasner@skadden.com
james.carroll@skadden.com
david.clancy@skadden.com
christopher.clark@skadden.com

*Attorneys for the Director Defendants*

28

IN WITNESS WHEREOF, the Settling Parties hereto have caused this Settlement to be executed, by their duly authorized attorneys as of July 30, 2015.

COHEN MILSTEIN SELLERS & TOLL PLLC

_____

Carol V. Gilden, Esq.
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.:  (312) 357-0370
Fax:  (312) 357-0369
cgilden@cohenmilstein.com

Kenneth M. Rehns, Esq.
88 Pine Street, 14th Fl.
New York, New York  10005
Tel: (212) 838-7797
Fax: (212) 838-7745
krehns@cohenmilstein.com

Steven J. Toll, Esq.
Joshua S. Devore, Esq.
E. Aniskevich, Esq.
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
eaniskevich@cohenmilstein.com
*Attorneys for Lead Plaintiff and the Class*

GOODWIN PROCTER LLP

*Mark Holland*

Mark Holland, Esq.
Mary K. Dulka, Esq.
Valerie A. Haggans, Esq.
Charles A. Brown, Esq.
Erin V. Klewin, Esq.
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Tel.:  (212) 813-8800
Fax:  (212) 355-3333
mholland@goodwinprocter.com
mdulka@goodwinprocter.com
vhaggans@goodwinprocter.com
cbrown@goodwinprocter.com
eklewin@goodwinprocter.com

*Attorneys for the IntraLinks Defendants*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*James R Carroll*

Jay B. Kasner, Esq.
James R. Carroll, Esq.
David S. Clancy, Esq.
Christopher G. Clark, Esq.
Four Times Square
New York, New York 10036
Tel.: (212) 735-3000
—and—
500 Boylston Street
Boston, MA 02116
Tel.: (617) 573-4800
jay.kasner@skadden.com
james.carroll@skadden.com
david.clancy@skadden.com
christopher.clark@skadden.com

*Attorneys for the Director Defendants*

WEIL, GOTSHAL & MANGES LLP

Jonathan D. Polkes, Esq.
Joshua S. Amsel, Esq.
Eric C. Hawkins, Esq.
767 Fifth Avenue, 25th Floor
New York, NY  10153
Tel.:  (212) 310-8000
Fax:  (212) 310-8007
jonathan.polkes@weil.com
joshua.amsel@weil.com
eric.hawkins@weil.com

*Attorneys for the Underwriter Defendants*

29