**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM D. WALLACE, Individually and On Behalf of All Others Similarly Situated, | X : : |
| Plaintiff, | : : : |
| v. | : Civil Action No. 11-CV-8861 : : |
| INTRALINKS HOLDINGS, INC., ANDREW DAMICO and ANTHONY PLESNER, | : : : |
| Defendants. | : X |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF THE SETTLEMENT; (II) APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS AND (III) SCHEDULING OF A FINAL APPROVAL HEARING**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND OF THE LITIGATION....................................................... 3

III.  SETTLEMENT NEGOTIATIONS ................................................................. 5

IV.  ARGUMENT ........................................................................................................ 6

      A.      The Proposed Settlement Warrants Preliminary Approval.................... 6

      B.      The Proposed Settlement is Fair, Reasonable and Adequate................. 8

             1.     The Proposed Settlement is the Result of Non-Collusive, Arms' Length Negotiations.................................................................... 8

             2.     The Settlement was Reached by Capable Counsel After Meaningful Discovery....... 9

             3.     The Proposed Settlement is in the Best Interests of the Class ................................. 10

V.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE ADEQUATE....................................................................................................... 11

      A.      The Scope of the Notice Program......................................................... 11

      B.      The Notice Program Comports with Due Process ................................ 12

VI.  PROPOSED SCHEDULE OF EVENTS........................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Advanced Battery Techs. Secs. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................14

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...........................................11

*Authors Guild v. Google, Inc.*,
2009 U.S. Dist. LEXIS 116175 (S.D.N.Y. Dec. 1, 2009) .......................7

*In re Currency Conversion Fee Antitrust Litig.*,
2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...........................................9

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)......................................................................8

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................................................................7

*In re Gilat Satellite Networks, Ltd.*,
2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007) ....................10

*Great Neck Capital Appreciation Inv. P'ship, LP v. Pricewaterhouse Coopers*,
LLP, 212 F.R.D. 400 (E.D. Wis. 2002) ................................................10

*In re Initial Pub. Offering Sec. Litig.*,
226 F.R.D. 186 (S.D.N.Y. 2005) ............................................6, 8, 10, 11

*In re Interpublic Sec. Litig.*,
Nos. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190 (S.D.N.Y.
Oct. 26, 2004) ..........................................................................................6

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...........................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................6

*New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group,
PLC, et al.*,
Civ. No. 08-5093-LAP, Dkt. No. 270 (S.D.N.Y. July 18, 2014)...........13

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F. 3d 132 (2d Cir. 1998)...........................................................................6

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014)....................................7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................6, 11

*In re Sadia S.A. Sec. Litig.*,
  2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011) ....................................14

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) .................................................................6, 10

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)...............................................................9

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
  396 F.3d 96 (2d Cir. 2005)..................................................................7, 12, 13

*Wallace v. Intralinks*,
  302 F.R.D. 310 (S.D.N.Y. 2014) ....................................................................9

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 20,
  2008) ...........................................................................................7

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)...........................14

## STATUTES

15 U.S.C. § 78u-4(a)(7) ..................................................................................13

Section 21 of the Securities Act of 1933, 15 U.S.C. § 77u-4 .............................................2

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§
  78j(b) and 78t(a) ......................................................................................3

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5.....................................................................................3

Fed. R. Civ. P. 23 of the Federal Rules of Civil Procedure ................................. *passim*

*Manual for Complex Litigation, Third* § 30.42 (1995)...................................................7

Lead Plaintiff, Plumbers and Pipefitters National Pension Fund ("Lead Plaintiff"), respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of a proposed settlement of all claims in this action ("the Settlement"); (ii) approval of the form and manner of notice to Class Members; and (iii) the scheduling of a hearing (the "Final Approval Hearing")[1] on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses. Subject to the Court's availability, Lead Plaintiff respectfully requests that the Court schedule the Final Approval Hearing for a date during the second week in November, 2015.

## I.    INTRODUCTION

After approximately three and a half years of hard fought litigation, which included denial in part of Defendants' motions to dismiss; certification of the Class,[2] including a Securities Act subclass; briefing on and the denial of Defendants' petition for appellate review under Rule 23(f); and the completion of fact discovery, including 23 depositions and expansive written discovery; an all cash settlement of $14 million was achieved for the benefit of the Class. This $14 million cash settlement provides an immediate benefit to the Class to resolve the claims against Defendants.

---

[1] All capitalized terms not explicitly defined herein shall have the definition attributed to them in the Stipulation and Agreement of Settlement, dated July __, 2015 (the "Settlement"), filed concurrently herewith.

[2] As the Court has previously certified, the Class here consists of:

all persons and entities who purchased or acquired IntraLinks common stock between February 17, 2011 and November 11, 2011, inclusive, including a subclass of those persons or entities who purchased IntraLinks common stock pursuant or traceable to the Company's registration statement and prospectus issued in connection with the April 6, 2011 Secondary Offering and who were damaged thereby. Excluded from the Class are: Defendants; members of the immediate family of any Defendant; any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has or had a controlling interest during the Class Period; the officers and directors of any Defendant during the Class Period; and legal representatives, agents, executors, heirs, successors, or assigns of any such excluded person or entity. Any person or entity that timely and validly requests exclusion from the Class pursuant to and in accordance with the terms of the Preliminary Approval Order is also excluded from the Class.

See Settlement, ¶ 1(d).

Lead Plaintiff and Lead Counsel – based upon extensive discovery and a fully informed evaluation of the facts and applicable law in this case and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Class and provides a meaningful recovery for the Class now.  Accordingly, Lead Plaintiff respectfully moves for approval of the form and manner of distribution of notice to the Class and scheduling of a Final Approval Hearing.

Specifically, Lead Plaintiff requests that the Court enter the proposed Order Preliminarily Approving the Settlement, Approving Notice to the Class and Scheduling of Final Approval Hearing (the "Preliminary Approval Order"), attached to the Declaration of Carol V. Gilden, dated June 29, 2015 ("Gilden Decl.") as Exhibit A hereto and as Exhibit A to the Settlement, which, *inter alia*, will:

(i)      approve the form and content of the Notice of Pendency of Class Action, Preliminary Approval Order and Proposed Settlement, Final Approval Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice"), Proof of Claim Form and Summary Notice ("Summary Notice"), attached as Exhibits A-1, A-2 and A-3 to the Settlement, respectively;

(ii)      find that the procedures established for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77u-4, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. No. 104-67, 109 Stat. 737; and

2

(iii)     schedule the Final Approval Hearing and establish a schedule and procedures for:  disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Class; objecting to the Settlement; Lead Counsel's Motion for Fees and Reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## II.     BACKGROUND OF THE LITIGATION

The case commenced on December 5, 2011 when plaintiff William Wallace filed a class action complaint, Civil Action No. 11-cv-8861-TPG, against IntraLinks Holdings, Inc. ("IntraLinks" or the "Company"), and two of its corporate officers, J. Andrew Damico and Anthony Plesner (the "Officer Defendants"), on behalf of a class comprising purchasers of the Company's common stock between February 17, 2011 and November 10, 2011, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5 (the "Exchange Act").  The case was assigned to the Honorable Thomas P. Griesa.  On December 27, 2011, plaintiff Michael Thaler filed a virtually identical class action against the same defendants in the same Court.  On April 3, 2012, the Court consolidated the two actions, appointed Plumbers and Pipefitters National Pension Fund as Lead Plaintiff, and approved Lead Plaintiff's selection of Cohen Milstein Sellers & Toll PLLC as Lead Counsel in the consolidated action (the "Action").

On June 15, 2012, Lead Plaintiff filed a Consolidated Class Action Complaint (the "Complaint") in this Action.  The Complaint added as Defendants IntraLinks directors Patrick J. Wack, Jr.; Brian J. Conway, Peter Gyenes, Thomas Hale, Habib Kairouz, Robert C. McBride, and Harry D. Taylor; Morgan Stanley & Co. Inc., Jefferies LLC (f/k/a Jefferies & Company, Inc.), Lazard Capital Markets LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank

Securities Inc., and Pacific Crest Securities LLC (together, the "Underwriter Defendants"), the six underwriters of the Company's April 6, 2011 offering of common stock ("Secondary Offering"). The Complaint alleged: (1) that certain defendants made material misrepresentations and omissions in violation of the Exchange Act relating to the success of the Company's Enterprise business segment, the impending loss of the Company's largest customer, the Federal Deposit Insurance Corporation ("FDIC"), and the classification of revenue and customer billing practices allegedly employed by the Company; (2) that the Officer Defendants are liable for any primary violation of the Exchange Act as alleged control persons under Section 20(a) of the Exchange Act; (3) that all Defendants made or were otherwise liable for material misrepresentations and omissions in the registration statement and prospectus for the Secondary Offering in violation of the Securities Act; and (4) that the directors who signed the Registration Statement for the Secondary Offering were liable for any primary violation of the Securities Act as alleged control persons under Section 15 of the Securities Act.

On July 31, 2012, Defendants moved to dismiss the Complaint. On May 8, 2013, the Court issued an opinion dismissing the Complaint's allegations related to the classification of revenue and customer billing practices of IntraLinks but otherwise upholding Lead Plaintiff's allegations of misstatements and omissions concerning the success of the Company's Enterprise business segment and the purportedly impending loss of the FDIC's business.

Shortly thereafter, the Parties commenced discovery in this action focused on IntraLinks' Enterprise business and its dealings with the FDIC, beginning with extensive negotiations concerning the production of documents and the scope of those productions. In the midst of discovery, on February 18, 2014, Lead Plaintiff filed its motion for class certification ("Class Certification Motion"), which Defendants opposed. On September 30, 2014, the Court granted

in large part Lead Plaintiff's motion and certified a class of all persons and entities who purchased or acquired IntraLinks stock between February 17, 2011 and November 11, 2011 and a subclass of persons or entities for claims under Section 11 of the Securities Act who purchased IntraLinks stock pursuant or traceable to the Company's April 6, 2011 Secondary Offering, certifying Lead Plaintiff as Class Representative, and appointing Cohen Milstein Sellers & Toll PLLC as Lead Counsel (the "Class Certification Decision").  The Court denied certification of Subclass claims brought pursuant to Section 12 of the Securities Act.

On October 14, 2014, Defendants filed a petition under Federal Rule of Civil Procedure 23(f) with the Second Circuit requesting interlocutory appeal of the District Court's Class Certification Decision.  After Lead Plaintiff opposed Defendants' petition, the Second Circuit denied the petition on December 30, 2014.

The parties have engaged in comprehensive discovery relating to the claims and the underlying events alleged in Lead Plaintiff's Complaint and completed fact discovery.  In doing so, Lead Counsel reviewed over 1.9 million pages of documents, took 21 depositions, defended and/or attended two additional depositions, and retained and consulted with experts in electronic discovery, accounting, damages, market efficiency and investment banking due diligence.

## III.    SETTLEMENT NEGOTIATIONS

At the conclusion of fact discovery in February 2015, the parties agreed to request a stay of expert discovery in an attempt to reach a settlement.  The Settlement was negotiated under the auspices of the mediator Jed Melnick, a well-respected mediator with JAMS Arbitration, Mediation and ADR Services ("JAMS").  After the submission of mediation statements, the parties engaged in a full day mediation (on April 14, 2015) and after numerous follow-up calls and emails in the weeks after that mediation session, the Parties reached a definitive agreement

with respect to the Settlement Amount of fourteen million U.S. dollars ($14,000,000.00) and related terms. Once the Parties agreed in principle to settle the action, Lead Counsel and Defendants' Counsel notified the Court of their agreement. On July 30, 2015, the Parties executed the Settlement.

## IV.   ARGUMENT

### A.   <u>The Proposed Settlement Warrants Preliminary Approval</u>

There is a "strong judicial policy in favor of settlement, particular in the class action context." *In re PaineWebber Ltd. P'ships Litig.*, 147 F. 3d 132, 138 (2d Cir. 1998); *In re Interpublic Sec. Litig.*, Nos. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004). Approving a settlement "is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (internal quotations omitted).

Preliminary approval of a proposed settlement "is the first in a two-step process required before a class action may be settled." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). First, "the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). Where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Id*. (*quoting NASDAQ Market-Makers*, 176 F.R.D. at 102).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships*

*Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks and citation omitted).

Any further analysis of the fairness of a proposed settlement under the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)) is unnecessary at this stage and is to be reserved for the Court's determination of final approval of the settlement. *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840, at *4 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the Grinnell] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed."); *In re Platinum & Palladium Commodities Litig.*, No. 10-3617, 2014 U.S. Dist. LEXIS 96457, at *38 (S.D.N.Y. July 15, 2014) ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval."); *see also Authors Guild v. Google, Inc.*, 2009 U.S. Dist. LEXIS 116175, at *2-3 (S.D.N.Y. Dec. 1, 2009) ("In evaluating a proposed class action settlement agreement for preliminary approval . . . a full fairness analysis is neither feasible nor appropriate.").

Where the settlement, is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery," then a "presumption of fairness, adequacy, and reasonableness may attach." *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (*quoting Manual for Complex Litigation, Third* § 30.42 (1995)). The proposed Settlement is a very good result for Lead Plaintiff and the Class. The Settlement, which was reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery, provides a recovery in a case where Lead Plaintiff faced significant hurdles in proceeding with

the litigation and proving liability and damages, and is certainly within the range that would be determined to be fair, reasonable and adequate.

   **B.    The Proposed Settlement is Fair, Reasonable and Adequate**

   **1.    The Proposed Settlement is the Result of Non-Collusive, Arms' Length Negotiations**

The proposed Settlement of $14 million presents an excellent result for the Class, and is the product of extensive arms' length negotiations between Lead Plaintiff and Defendants. These arms' length negotiations were facilitated through mediation before an experienced and well regarded mediator, Jed Melnick.

   The Parties participated in a 12 hour-long mediation session on April 14, 2015 in New York City. Prior to this mediation session, the Parties prepared comprehensive mediation statements and submitted them to the mediator along with a 93 exhibit joint appendix, totaling 881 pages.  The Parties made substantial progress at the mediation and came close to resolving this case.  In the weeks that followed, the Parties continued to engage in follow-up discussions with the mediator and his staff and ultimately reached an agreement in principle to settle this action.  Following this agreement in principle, the Parties spent weeks negotiating the specific terms of the Settlement which are embodied in the Settlement that was executed by the Parties.

   At all times, the Parties' negotiations were conducted at arms' length, and the process required all Parties and their counsel to assess difficult and uncertain outcomes. There can be no doubt that the proposed Settlement is "the product of serious, informed, non-collusive negotiations." *Initial Pub. Offering*, 226 F.R.D. at 194 (finding proposed settlement the product of non-collusive negotiations where settlement negotiations were facilitated by an experienced and well-respected mediator); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that "mediator's involvement in . . . settlement negotiations helps to ensure that the

proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion"); *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) ("Judge Infante's participation in the negotiations substantiates the parties' claim that the negotiations took place at arm's length.").

### 2. The Settlement was Reached by Capable Counsel After Meaningful Discovery

The factual issues raised in this action were complex. And, as the Court recognized in its Class Certification Decision, Lead Counsel is "highly experienced and qualified to prosecute the class action." *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014). *See also* Gilden Decl., Exhibit B (Cohen Milstein Firm Resume).

As an initial matter, the Parties did not begin the mediation process until they first completed fact discovery which included 23 depositions and Lead Counsel's review of more than 1.9 million pages produced by Defendants and third parties, including the FDIC. This timing demonstrates that the Parties had sufficient information to properly evaluate the strengths and weaknesses of the claims asserted in the Complaint.

Further, in connection with class certification and ultimately damages, Lead Plaintiff retained and consulted with Dr. Michael L. Hartzmark of Hartzmark Economics Litigation Practice, LLC, who submitted two expert reports in support of Lead Plaintiff's motion for class certification. See Expert Report of Michael L. Hartzmark, Ph.D. (Dkt. No. 72-1); Rebuttal Report of Michael L. Hartzmark, Ph.D. (Dkt. No. 96-3). Dr. Hartzmark conducted a series of financial analyses and concluded that (1) the market for IntraLinks stock was efficient; (2) it was overwhelmingly likely that the drop in IntraLinks stock price following the three alleged partial

disclosure dates were related, at least in part, to disclosures regarding IntraLinks' alleged fraud and material misstatements and omissions; and it was economically and financially feasible to calculate the economic loss for purchasers of IntraLinks stock.

Lead Plaintiff also retained and consulted with an expert on investment banking due diligence, who had years of experience in investment banking. Although a report proved unnecessary because the parties reached a proposed settlement, Lead counsel consulted with this expert throughout discovery.[3]   Lead Plaintiff thus had a clear and detailed view of the factual strengths and weaknesses of the case. *Initial Pub. Offering*, 226 F.R.D. at 194 (preliminarily approving settlement where "[t]he settling parties are represented by experienced and talented counsel that share expertise in this field and an extensive knowledge of the details of this case."); *see also Great Neck Capital Appreciation Inv. P'ship, LP v. Pricewaterhouse Coopers*, LLP, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("[T]he settlement was reached after PwC's motion to dismiss had been decided and after merits discovery was well underway. Thus, plaintiffs' counsel's evaluation of the case was based on a reasonable amount of information.").

### 3.   The Proposed Settlement is in the Best Interests of the Class

The $14 million proposed Settlement represents an exceptional recovery for the Class. "Securities class actions are generally complex and expensive to prosecute." *In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 29062, *36 (E.D.N.Y. Apr. 19, 2007); *see also Sumitomo Copper Litig.*, 189 F.R.D. at 281 ("[I]n evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."). Because of:

> the lengthy, costly, and uncertain course of further litigation, the settlement
> provides a significant and expeditious route to recovery for the Class. In the

---

[3] During the case, Lead Plaintiff also consulted with an accounting expert regarding Lead Plaintiff's earlier-alleged accounting allegations.

circumstances of such a case as this, it may be preferable to take the bird in the hand instead of the prospective flock in the bush.

*Prudential*, 163 F.R.D. at 210. The proposed Settlement will allow the Class to receive a concrete benefit now, not a hypothetical benefit after years of uncertain litigation and a far- from guaranteed jury verdict. *See In re AOL Time Warner, Inc.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (immediate, substantial and concrete benefit of settlement outweighs possibility of higher recovery after trial).  Moreover, even if Lead Plaintiff were to obtain a favorable jury verdict that would survive the inevitable round of appeals, it is doubtful there would be sufficient insurance policy proceeds and/or Company assets to satisfy a substantial judgment.

In sum, nothing in the course of the Parties' negotiations or the terms of the Settlement discloses any grounds to doubt the fairness of the Settlement. On the contrary, the substantial recovery for the Class, the extensive investigation and discovery conducted, the Parties' litigation efforts over the course of more than three years, the arms'-length nature of the negotiations, and the participation of an experienced mediator amply support a finding that the proposed Settlement is well "within the range of possible approval" so as to justify notice to the Class and scheduling of a Final Approval Hearing.

## V.     THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE ADEQUATE

Once a court preliminarily approves a settlement as fair, adequate and reasonable, then "it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." Initial Pub. Offering, 226 F.R.D. at 191.

### A.     The Scope of the Notice Program

Following a competitive bidding process and extensive evaluation, Lead Counsel has selected Kurtzman Carson Consultants, LLC, a highly experienced and diligent class action claims administrator, to serve as the Claims Administrator for the proposed Settlement. In

11

connection with the proposed Settlement, the Claims Administrator will receive a list of those Class Members that Dr. Hartzmark was able to identify as part of Lead Plaintiff's Class Certification Motion (Ex. VI, Dkt. No. 72-1).  The Claims Administrator will make an initial mailing of the Notice and Proof of Claim to these Class Members, as well as thousands of nominees contained in its proprietary nominee database.

Lead Plaintiff will also publish a Summary Notice, which provides a summary of the action and the proposed Settlement, and also explains how to obtain the more detailed Notice and Proof of Claim. The Summary Notice will be published in *Investor Business Daily* as well as transmitted over *PR Newswire*, not later than 21 days after the entry of proposed Preliminary Order (subject to Court approval).

Lead Plaintiff has also instructed the Claims Administrator to maintain a website, at www.IntraLinksSecuritiesSettlement.com.  This website will provide more information on the settlement and the Final Approval Hearing, including downloadable copies of the Notice, Summary Notice, Proof of Claim, and Settlement. The Claims Administrator will also maintain a toll-free telephone number for Class Members to call with any questions.  The Preliminary Approval Order, Notice and Proof of Claim Form will also be available on Lead Counsel's website at www.CohenMilstein.com.

**B.**     **The Notice Program Comports with Due Process**

The standard for determining the adequacy of a class action settlement notice under either the Due Process Clause or the Federal Rules is reasonableness. *Wal-Mart*, 396 F.3d at 113. The Second Circuit has explained:

> There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the

> proceedings. Notice is adequate if it may be understood by the average class member.

*Id*. at 114 (internal citation and quotations omitted). In addition, the PSLRA sets forth several items of information that must be present in securities fraud settlement notices. See 15 U.S.C. § 78u-4(a)(7).

The proposed Notice has been carefully drafted to contain all necessary information. All of the information is provided in a format that is easily accessible to the reader. The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (internal quotation marks omitted). The Notice advises recipients of their legal rights and obligations in connection with the Settlement, including the right to object to any portion of the Settlement, exclude themselves from the Class, or submit a completed Proof of Claim Form in order to be eligible to share in the Settlement. Contact information for both Lead Counsel and the Claims Administrator is provided, as well as a toll-free number and website for the recipient if there are any further questions. As described above and further outlined in the proposed Preliminary Approval Order, Lead Plaintiff will (i) notify Class Members of the Settlement by mailing the Notice and Proof of Claim Form to all potential Class Members who can be identified with reasonable effort,[4] (ii) cause the Summary Notice to be published in *Investor Business Daily* and transmitted over *PR Newswire*, and (iii) maintain a website with relevant information at www.IntraLinksSecuritiesSettlement.com. Notice programs such as this have been approved in a multitude of class action settlements. *New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC, et al.*, Civ. No.

---

[4] Lead Plaintiff, through the assistance of the Claims Administrator, will also use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons who purchased or otherwise acquired IntraLinks stock during the Class Period as record owners but not as beneficial owners.

08-5093-LAP, Dkt. No. 270 (S.D.N.Y. July 18, 2014) (approving notice program where notice was mailed to reasonably ascertainable class members and broker-dealer nominees, summary notice was published and settlement website and toll-free number was maintained by claims administrator); *In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (notice program approved where claims administrator disseminated notice to reasonably ascertainable class members and published summary notice in *Investor's Business Daily* and over *PR Newswire*); *In re Sadia S.A. Sec. Litig.,* 2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011) (approving notice program where notice was mailed to class members identified from transfer records, summary notice was published, and settlement website was maintained for further information); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007) (notice program approved where claims administrator disseminated notice and proof of allocation to class members and published summary notice "in appropriate publications").

Lead Plaintiff's proposed manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of Due Process and Rule 23 of the Federal Rules. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *Global Crossing*, 225 F.R.D. at 448-49. Therefore, Lead Plaintiff respectfully submits that the Court should approve the form and content of the Notice.

## VI. PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule for the Settlement-related events in this case.

| Event | Proposed Date/Deadline |
|---|---|
| Publish Notice of Settlement and Begin Mailing Long Form Notice to Class Members | 21 days after Preliminary Approval Order is entered |
| Deadline to File Requests for Exclusion from Settlement | 28 days before Final Approval Hearing |
| Deadline to File Motion for Final Approval of Settlement and for Reimbursement of Litigation Expenses | 28 days before Final Approval Hearing |
| Objections to Final Approval and Reimbursement of Litigation Expenses | 14 days before Final Approval Hearing |
| Reply to Objections, if any | 7 calendar days before Final Approval Hearing |
| Final Settlement Approval Hearing in District Court | During the second week of November, subject to the Court's availability. |
| Deadline for the Submission of Proof of Claim Forms | 120 days after Preliminary Approval Order is entered |

**CONCLUSION**

Lead Plaintiff respectfully requests that the Court (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to Class Members; and (iii) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses during the second week of November, 2015, subject to the Court's availability.  A proposed Preliminary Approval Order is being submitted herewith. *See* Gilden Decl., Exhibit A.

Dated: New York, New York
     July 31, 2015

          **COHEN MILSTEIN SELLERS
           & TOLL PLLC**

          By: */s/ Carol V. Gilden*
              Carol V. Gilden
              190 South LaSalle Street, Suite 1705
              Chicago, IL 60603
              Tel: (312) 375-0370
              cgilden@cohenmilstein.com

              Steven J. Toll
              Joshua S. Devore
              Elizabeth Aniskevich

1100 New York Avenue N.W., Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
eaniskevich@cohenmilstein.com

Kenneth M. Rehns
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
krehns@cohenmilstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2015, I caused the foregoing brief to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel.

**COHEN MILSTEIN SELLERS**
  **& TOLL PLLC**

*/s/ Kenneth Rehns*
Kenneth Rehns
88 Pine Street
Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745